UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

DeJuan Haywood Haggins                     Case No. 0:15-cv-59-DWF-KMM

      Plaintiff,

v.
                                          **REPORT AND**
Ramsey County et al.,                          **RECOMMENDATION**

      Defendants.

---

      Plaintiff DeJuan Haywood Haggins sued the defendants Ramsey County and several corrections officers (collectively, "Defendants") in their official and individual capacities, alleging that he was subjected to excessive force while in Ramsey County custody. The Defendants have filed a motion for summary judgment. (ECF No. 125.) After careful review of the record and all submissions, the Court recommends that the Defendants' motion be **GRANTED**, and this case dismissed.

## FACTS

### A.    The Transfer of Mr. Haggins

      In 2009, when the alleged incident occurred, Mr. Haggins was incarcerated at Minnesota Correctional Facility-Stillwater ("MCF-Stillwater"). On February 23, he was briefly transferred to the Ramsey County Adult Detention Center ("ADC") for a hearing in a criminal case in Ramsey County District Court. (Affidavit of Robert Roche, Ex. B.; Amend. Compl., ECF No. 5.) Mr. Haggins had a long history of disruptive and violent behavior at ADC, including making violent threats to other inmates and staff members and actually assaulting both inmates and staff. (Affidavit of Brad Lindberg, Exs. A, B.) His violent behavior is so consistent and extreme that any time he is in custody in Ramsey County, he is required to be housed in a restricted area for the protection of others. (Lindberg Aff. ¶¶ 3, 4.) Additionally, staff must always move Mr. Haggins in full restraints with a two-officer escort. (*Id*.) ADC staff

1

were ordered to treat Mr. Haggins as dangerous when interacting with him. (*Id.* ¶¶ 2–4, Ex. A.)

On February 23, 2009, officers responded to reports of Mr. Haggins causing a disturbance in the open booking area of the ADC. (Roche Aff. Ex. F.) They were asked to move Mr. Haggins to segregation because of the disturbance. (*Id.*) When they arrived, they spoke with Mr. Haggins through a door and asked if he would cooperate. (*Id.*) He responded with threats to the staff. (*Id.*) Officers then asked Mr. Haggins to turn around, place his hands behind his back, and place his hands through the food pass so that he could be handcuffed. (*Id.*). Instead, Mr. Haggins moved to the back of the cell, so the officers opened the door in order to restrain him. (*Id.*) As officers approached, Mr. Haggins took a "fighting stance," at which point the officers took Mr. Haggins to the ground to be cuffed. (*Id.*)

### B.     Mr. Haggins's Alleged Injuries

The ADC report of the incident on February 23 stated that no injuries were sustained by either staff or Mr. Haggins. (*Id.*) However, Mr. Haggins claimed numerous injuries following the incident, including a "busted" lip, black eye, whiplash, bruising on his torso, a broken tooth, and a bloody nose. (Amend. Compl., ECF No. 5.) Mr. Haggins was sent to the Transfer Release Area of the ADC to be transported to the Ramsey county Courthouse. (Affidavit of Michael Harer, ¶¶ 2–3, Ex. A.) Officer Michael Harer, who was present with Mr. Haggins on February 23, 2009, did not observe any sign of injuries on Mr. Haggins. (*Id.*) Further, had there been visible injuries, Officer Harer would not have released Mr. Haggins for transportation to the courthouse until he had been seen by medical staff. (*Id.*)

Shortly after the incident, Mr. Haggins appeared in front of Ramsey County Judge Rosanne Nathanson and told her that he had been "rumbling" with "six or seven" corrections officers earlier that morning, and that "if I was a white guy, I'd have a lot of bruises on me right now—believe that." (Haggins Ex. F, ECF No. 150.) Judge Nathanson gave a deposition in this case and testified that although she was within a few feet of Mr. Haggins, she did not note any visible injuries. (Roche Aff. Ex. I, 24:6–20.) She further testified that, had she noticed any injuries, she would have made a record of the injuries and tried to find out where they had come from. (*Id.*, 25:1–14.) Further, she would have expected Mr. Haggins's attorney, Michael

2

Davis, to note for the record if it had appeared that Mr. Haggins had been harmed. (*Id.*, 30:24–31:4.)  There is no indication on the record of the February 23, 2009 proceeding that Mr. Davis, the prosecutor Daniel Vlieger, or Judge Nathanson noted any obvious sign of harm on Mr. Haggins.

Mr. Haggins was returned to MCF-Stillwater that same day, where he interacted with corrections officer Bryan Milliron.  Officer Milliron had received a report of the incident at the ADC, but did not recall observing any injuries on Mr. Haggins. (Affidavit of Bryan Milliron, ¶ 3.)  Mr. Haggins states that Officer Milliron and he conversed about an injury to the inside of Mr. Haggins's lip (ECF No. 145), but there is no record of this.  Officer Milliron states that had Mr. Haggins reported any injuries, he would have been taken for an evaluation at health services, where a record would have been made.  (Milliron Aff., ¶ 3.)

Mr. Haggins also met with Clinical Program Therapist Paige Berg twice in the days after the February 23 incident.  On February 24, 2009, Mr. Haggins met with Ms. Berg and reported no incident or injuries.  (Affidavit of Paige Berg, Ex. A.)  On February 26, 2009, Mr. Haggins told Ms. Berg about "an altercation" at the ADC, but again did not report any injuries.  (Berg. Aff. Ex. C.)  Ms. Berg also noted no visible injuries on either occasion.

Mr. Haggins brought an excessive force claim against Ramsey County and the correctional officers involved in the incident at the ADC.  (ECF No. 5)  The Defendants now move for summary judgment.  (ECF No. 123.)

## ANALYSIS

### A.   Summary Judgment Standard

A movant is entitled to summary judgment where "no genuine dispute as to any material fact [exists] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Where no reasonable jury could find in favor of the non-movant, there is no genuine dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Material facts are only those "that might affect the outcome of the suit under the governing law." *Id.*  Where there is a genuine dispute of facts, those facts should be viewed in the light most favorable to the non-moving party.  *E.g.*, *Scott v. Harris*, 550 U.S. 372, 380 (2007).  However, "[w]hen opposing parties tell two different

stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Id.*

The moving party must first "identify the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). It can satisfy its burden either by demonstrating evidence that negates an essential element of the non-movant's case or by showing that insufficient evidence exists to support the non-moving party's case. *Id.* Once the moving party has satisfied its initial burden, the responsibility shifts to the non-moving party to submit evidence of "specific facts showing the presence of a genuine issue for trial." *Id.* (citing *Torgerson*, 643 F.3d at 1042). In doing so, "[a non-moving party] may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor without resort to speculation, conjecture, or fantasy." *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790–91 (8th Cir. 2009) (quotations and citations omitted); *see also Frevert v. Ford Motor Co.*, 614 F.3d 466, 473 (8th Cir. 2010) ("'[a] properly supported motion for summary judgment is not defeated by self-serving affidavits." (quoting *Bacon v. Hennepin Cty. Medical Center*, 550 F.3d 711, 716 (8th Cir. 2008))).

Against this legal backdrop, the Court finds that Mr. Haggins has not satisfied his burden to rebut the Defendants' motion by demonstrating the presence of a genuine issue of material fact.

**B.     Official Capacity Claims**

The Defendants first argue that all of Mr. Haggins's claims against the Defendants in their official capacities must fail because he has not identified an unconstitutional custom, practice, or policy of Ramsey County. The Court agrees.

Where a plaintiff asserts that officers acted in their official capacities, the Court construes the complaint as raising a *Monell* claim. *Slaughter v. Lawrenz*, 2017 WL 4862764 at *5 (D. Minn. Oct. 26, 2017) (citing *Monell v. New York Dept. of Social Serv.*, 436 U.S. 658, 690 n.55 (1978)). In other words, "a suit against a public employee in

4

that person's official capacity is merely a suit against the public employer." *Id.* (citation omitted). "[A] municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality." *Yellow Horse v. Pennington City*, 225 F.3d 923, 928 (8th Cir. 2000).

Neither Mr. Haggins's Complaint nor his summary judgment briefing identifies any custom, practice, or policy of Ramsey County as being responsible for the injuries he claims. (*See* ECF Nos. 5, 144.) Because Mr. Haggins does not allege an essential element of an official capacity claim, that claim must fail as a matter of law. *See Smithrud v. St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014). The Court recommends that Mr. Haggins's claims against Ramsey County and its officers in their official capacity be dismissed with prejudice.

## C.     Individual Capacity Claims

Mr. Haggins has also sued the officers involved in the incident on an individual basis. Though he does not invoke it in his complaint, because this is an excessive force claim arising out of an incident in custody, the Court construes the complaint as alleging a violation of the Eighth Amendment right to be free from cruel and unusual punishment. *E.g.*, *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). In order to establish a claim of excessive force in the prison context, a plaintiff must demonstrate that the force was applied "maliciously and sadistically to cause harm," and not "in a good-faith effort to restore or maintain discipline." *Id.* (quoting *Hudson v. McMillan*, 503 U.S. 1, 6–7 (1992). However, because the Court finds that Mr. Haggins cannot establish the violation of any clearly established right in this context, it need not consider how the excessive force framework would otherwise apply. *See Johnson v. Fankell*, 520 U.S. 911, 915 (1997) (noting that a finding of qualified immunity is outcome-determinative, because it shields the actor from suit).

### 1.     Qualified Immunity

Qualified immunity protects public officials from suit in specific circumstances. When an official acts in a constitutionally deficient manner, but does so due to a reasonable misapprehension of the law governing the circumstances, they are entitled to qualified immunity. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). However, an

5

official cannot take advantage of qualified immunity if: 1) the official deprived the plaintiff of a constitutional or statutory right, and 2) the right was clearly established, such that "a reasonable official would have understood that his conduct was unlawful under the circumstances." *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007). Whether qualified immunity is applicable in a given circumstance is a question of law. *Moore v. Indehar*, 514 F.3d 756, 764 (8th Cir. 2008). Qualified immunity is an affirmative defense; however, at the summary judgment stage, the burden is on the *plaintiff* to "present evidence from which a reasonable jury could find the defendant officer has violated the plaintiff's constitutional rights." *Id.* The Court concludes that Mr. Haggins has not carried his burden of establishing that a clearly established right was violated by the defendants in this case.

### 3.     No Clearly Established Right

Although it was clearly established on February 23, 2009 that officers could not use excessive force in restraining a prisoner, it was at that time an "open question in [the Eighth Circuit] whether an excessive force claim require[d] some minimum level of injury." *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011). This "open question" was finally closed when *Chambers* determined that an excessive-force inquiry needed to focus not on the injury sustained, but on the force applied. *Id.* at 906–07. However, *Chambers* was decided two years after the incident at the ADC occurred. Therefore, at the time that Mr. Haggins alleges he was subjected to excessive force, an officer reasonably could have believed that he did not violate a constitutional right so long as the force caused no more than a *de minimis* injury. *Id.* at 908. In other words, no right to be free from force that resulted only in *de minimis* injury was so clearly established that "a reasonable official would have understood that his conduct was unlawful under the circumstances." *Kahle* 477 F.3d at 550; *see also Chambers*, 641 F.3d at 908–09 (finding that qualified immunity applied because the law at the time did not clearly indicate to the officers that their conduct was unlawful).

In this case, Mr. Haggins cannot make the required showing. He has only one injury that is even arguably supported by evidence in the record. The Court concludes that this injury was *de minimis*, and therefore cannot defeat qualified immunity.

6

As explained above, the record is almost entirely devoid of evidence to support Mr. Haggins's self-serving claims of injury. Mr. Haggins's Complaint lists a number of injuries that he allegedly suffered as a result of the incident at the ADC: a busted/swollen lip; a swollen right eye; whiplash; bruises on his torso and rib pain; a chipped tooth;[1] and a bloody nose. (ECF No. 5; *see also* Dep. of DeJuan Haggins, ECF No. 161, 18:17–21:17.) He also alleged that he was choked into unconsciousness. (*Id.*) Yet despite having interacted with half a dozen people in the hours and days after the incident, there is no evidence in the record to support his claims for any of these injuries. The incident report created shortly after the ADC incident lists no injuries. (Roche Aff. Ex. D.) Mr. Haggins appeared in court shortly after the incident, but his attorney, the prosecutor, and the judge did not see or make note of any injuries on Mr. Haggins. (Roche Aff. Exs. I, J; Affidavit of Daniel Vlieger, ECF No. 137, ¶ 3.) No report of injuries observed was made after Mr. Haggins returned to MCF-Stillwater, and Mr. Haggins received no medical care upon his return. (Harer Aff., ¶ 4.) Mr. Haggins even reported the incident to his therapist shortly after it occurred but did not report any injuries to her, and Ms. Berg likewise observed no injuries on Mr. Haggins. (Berg Aff. ¶ 2, Exs. A, C.) In sum, Mr. Haggins reported no injury and received no care for any injury until nearly four months after the incident.

These injuries cannot defeat a qualified immunity finding for two reasons. First, there is no evidence in the record to create a factual dispute as to whether the injuries even occurred. To the extent Mr. Haggins has attempted to substantiate these injuries, he has only submitted his own self-serving affidavits. (*See, e.g.*, ECF No. 145.) However, it is a well-settled principle in the Eighth Circuit that self-serving affidavits alone cannot defeat a well-supported motion for summary judgment where evidence undermines the claims made. *Frevert*, 614 F.3d at 473. Therefore, Mr. Haggins cannot

---

[1] In his original complaint and in his deposition, Mr. Haggins referred to the chipped tooth as a tooth that fell out. (*See* ECF Nos. 1, 161 at 18:17–21:17.) However, in his amended complaint and his most recent briefing to this Court, he refers to it as a chipped tooth. (*See* ECF Nos. 5, 144.) Because the description of a chipped tooth appears in the operative pleading, and because this is how Mr. Haggins has described the injury in his most recent briefing, the Court will refer to the allegation as a chipped tooth. There is no medical or dental evidence in the record to guide the Court in this matter.

7

carry his burden to demonstrate that a material factual dispute exists in this case. *E.g.*, *Bedford*, 880 F.3d at 996.

Second, even if there was evidence to support Mr. Haggins's claims of injury, they too would be considered *de minimis*. Bruising, a split lip, and a bloody nose are all non-permanent injuries of the type that the Eighth Circuit has found again and again to be *de minimis*. *See, e.g.*, *Chambers*, 641 F.3d at 906; *Robinson v. City of Minneapolis*, 957 F. Supp. 2d 1094, 1100 (D. Minn. 2013) (collecting pre-*Chambers* cases). Similarly, a chipped tooth is not serious enough to bring a case beyond the *de minimis* threshold. *Loving v. Roy*, 12-cv-551-SRN-LIB, 2013 WL 4734017 (D. Minn. Sept. 3, 2013) (summary judgment because claimed injuries of bruises, black eyes, a chipped tooth, and sprained wrists were not severe). Nor is Mr. Haggins's claim of being rendered momentarily unconscious, even if supported by evidence, adequate. The Court in *Robinson*, 957 F. Supp. 2d at 1100, found that a brief loss of consciousness, without evidence of permanent damage, from an officer's headlock did not rise above a *de minimis* injury.

Of all the claimed injuries in this case, only one is supported by any evidence in the record. However, this too is not enough to defeat qualified immunity. Mr. Haggins asserts that his claim of neck pain months after his alleged injury is enough to exceed the *de minimis* requirement and thwart qualified immunity. The Court disagrees.

On June 4, 2009, Mr. Haggins was seen for neck and arm pain, which he described as being a result of the February incident at the ADC. (Roche Aff. Ex. N.) The examination found that his systems were "vague" and "consistent with what one would consider to be a whiplash type injury." (*Id.*) He was treated with ibuprofen. (*Id.*) Minor neck pain that was successfully treated with over-the-counter pain relievers falls well-within the *de minimis* threshold. *See Oliver v. City of Minneapolis*, No. 04-3022-PAM-RLE, 2005 WL 2406035 at *2, 6 (D. Minn. Sept. 27, 2005) (finding minimal bruising and pain that was successfully treated with pain relievers was *de minimis* and officers were entitled to qualified immunity). Indeed, non-permanent injury or pain was regularly found to be *de minimis* prior to the *Chambers* decision. *See, e.g.*, *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006) (holding that a "less-than-permanent aggravation of a prior shoulder condition" was a *de minimis* injury); *Andrews*

8

*v. Fuoss*, 417 F.3d 813, 815 (8th Cir. 2005) (affirming dismissal of claims against an officer who caused, among other minor injuries, a sore neck, arm, and shoulder); *Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003) (finding that absent evidence of permanent injury, handcuffs secured so tight they caused bleeding was not excessive force). Thus, although this injury report could give rise to a fact dispute in the record, the Court concludes that it is not material, because it is a minor injury not significant enough to trigger a finding of a violation of a clearly established right.

In sum, Mr. Haggins cannot overcome qualified immunity in this case because there is no evidence in the record to suggest that Mr. Haggins suffered an injury that is constitutionally significant. Accordingly, IT IS HEREBY RECOMMENDED THAT:

1. The Defendant's Motion for Summary Judgment (ECF No. 123) be GRANTED.

2. Mr. Haggins's Amended Complaint (ECF No. 5) be DISMISSED WITH PREJUDICE.

Date: January 30, 2019

*s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections

are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.